84 151
32a 595

84 151
85a 461

84 151
203 490

JAMES WARD

*v.*

CECELIA J. ARMSTRONG.

1. TRUST—*when one results by law.* Where a party managing an estate uses funds belonging to the estate with which to buy an outstanding tax title on real estate, a resulting trust to the extent of that title will arise, by operation of law, in favor of the heirs entitled to the funds used, and the grantee will be considered as holding as trustee for such heirs.

2. SAME—*where land is bought partly with trust funds.* If a party purchases land with trust funds, and adds his own funds to the purchase money, a trust will result to the owner of the trust funds employed, and the burden will rest upon the trustee to show the amount put in by him, and if that be not shown the *cestui que trust* will take the whole estate.

3. RESULTING TRUST—*not affected by Statute of Frauds.* A resulting trust arises upon proof of the ownership of the funds used to make a purchase, and does not depend upon any agreement, and hence is not affected by the Statute of Frauds.

4. TRUSTEE—*his right to deal in trust property.* A trustee is not permitted to deal in trust property so as to make a profit to himself. All profits derived from its use are for the benefit of the *cestui que trust*, and in all dealings the trustee may have with the *cestui que trust* in regard to the trust property, the burden rests on him of showing its fairness.

5. SAME—*his right to purchase.* While the trust remains unperformed, the trustee will not be permitted to purchase the trust property as a stranger might, except upon a full and fair disclosure of everything that relates to it, that may, in any material degree, affect its value. If he has an advantageous offer for the property, it is his duty to make this known to the *cestui que trust*, before purchasing from him.

6. LACHES—*what delay not sufficient to bar relief.* Where a bill was filed to have a deed set aside, and to have a resulting trust declared, within a year after the facts of the trust came to the complainant's knowledge, this was not such an unreasonable delay as to bar equitable relief.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Messrs. DENT & BLACK, for the appellant.

Messrs. COOPER, GARNETT & PACKARD, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

John Bracken, in his lifetime, claimed to be the equitable owner of the lands involved in this litigation, but the legal title was in one Thomas Gavelin. After the death of John Bracken, his executors instituted a suit against Gavelin, to procure the legal title for the benefit of his heirs, three of whom survived him. Francis Bracken, one of the heirs, married complainant, and died in 1862. A posthumous child was born unto him, which lived but a short time, and died, leaving complainant its only heir at law. Pending the litigation concerning the Gavelin title, the property was sold for drainage assessments, and was bought by Donnelly, who afterwards sold the certificate of purchase to Kerfoot. It was thought to be for the interests of the heirs that an arrangement should be made with Kerfoot to perfect the tax title on the property, which was done. After Kerfoot had obtained a tax deed, at the request of John H. Bracken, who had then assumed the management of the affairs of the estate of his father, he conveyed all the title to the property which he had acquired under that deed to James Ward, one of defendants. Without any permission from any of the heirs, so far as we can know from this record, Ward afterwards conveyed the property, by quitclaim deed, to his daughter, Sarah Agnes Ward, there being no consideration for the conveyance.

In the meantime, Gavelin sold his interest in the property to Henry W. Blodgett, and by subsequent negotiations, conducted by John H. Bracken, in connection with Ward, he conveyed the property to Ward, for the consideration of $1900, which was all paid by Ward. That put an end to the litigation concerning the title to the property, and afterwards John

H. Bracken conveyed his undivided one-third interest in the property to Sarah Agnes Ward, and complainant, who had inherited through her deceased child the interest that was in her husband, also conveyed to Sarah Agnes Ward one undivided one-third interest in the property, for the consideration of $150 paid to her. It was not until 1873 that Thomas Bracken, the other heir, conveyed his interest in the property to Ward.

The bill is framed on the theory, the tax title on the property was purchased from Kerfoot with money that belonged to the estate of John Bracken, and that Ward took the title in trust for the benefit of the heirs, that in case they should be unsuccessful in the litigation with Gavelin, they might hold it as an adverse title to the property to that of Gavelin, which they were contesting.

It is sought to establish a resulting trust in the property in favor of complainant, and have her deed of the 27th of August, 1868, to Ward, set aside, on the ground it was obtained from her in ignorance of the fact Ward held the tax title to the property in trust for her. After the several conveyances to her, Sarah Agnes Ward, by quitclaim deed, reconveyed whatever interest she had in the property back to her father.

On the hearing, the court declared Ward held one-third of the property in trust for complainant, and having, by interlocutory decree, determined the rights of the parties, ordered a reference to the master that the equities might be adjusted on the basis of the decree. James Ward being the only party complaining of the decree, the case comes before us on his appeal.

There is some contradiction in the testimony, but we may assume as fairly proven, that the money with which the tax title was purchased from Kerfoot was the money of the estate of John Bracken. That it was bought in aid of the title claimed by the heirs, admits of no doubt. It seems probable a portion of the money was borrowed of defendant, Ward, by John H. Bracken, who had charge of the affairs of the estate after the executors ceased to act, with which to make payment for the

tax title to the property, and was afterwards adjusted between them.

Treating the money with which the tax title was purchased as funds belonging to the estate of John Bracken, as we are warranted in doing from the testimony, on conveyance to defendant, a resulting trust in the property to the extent of that title arises, by operation of law, in favor of the heirs, and the grantee must thereafter be considered as holding it as trustee for the parties to whom the funds used belonged. The relations existing between the trustee and the *cestuis que trust* do not depend upon any agreement made at the time of the conveyance to the trustee in this case, but arise upon proof of the ownership of the funds used in making the purchase. That fact determines the character of the transaction, and the trust presumed in favor of the owners of the funds employed in making the purchase, is in nowise affected by the Statute of Frauds, as it is not a matter of agreement.

It is familiar law, the trustee may not deal in trust property so as to make a profit to himself. Whatever use he may make of it, if profit is derived, the law presumes it is for the benefit of the *cestui que trust*, and will require him to render an account. In all dealings he may have with the *cestui que trust* in regard to the trust property, the burden rests on him of showing their fairness. While the trust remains unperformed, the trustee will not be permitted to purchase the property as a stranger might, except upon a full and fair disclosure of everything that relates to it, that may, in any material degree, affect the value or propriety of making the transaction. This salutary principle, we think, has its application to this case.

It was with the aid of the tax title which defendant held in trust for complainant and the other heirs, he was enabled to make an advantageous purchase of the adverse title to the property that had been the subject of litigation for so many years. It is no answer to this position to say, the tax title, if tested, might have proved to be worthless. The same may be affirmed of the equitable title the heirs had been endeavoring to assert. With both titles combined, defendant was able to

procure the absolute title for really one-half the value of the property. There can be no doubt the owner of the adverse title considered the strength of both titles held by the heirs, in making his proposition to give or take so much to settle the controversy. It may be, the conduct of John H. Bracken, in the part he took in the negotiations for the adverse claim to the property, is not free from criticism; but that fact did not relieve defendant from his obligations as trustee for the other heirs. Before he could bargain with complainant for her interest in the property, the law made it his duty to inform her of everything that materially affected its value. This he did not do. Long before he obtained complainant's deed to his daughter, he had a most advantageous offer for the title of the heirs, but instead of making that fact known to complainant, he purchased the property on such terms as he thought would realize a profit to himself. When these offers were made, it was obviously his duty to communicate them to the parties interested in the estate, and it was for them to elect which offer they would accept—whether they would sell their interest at the price offered, or buy at the price their adversary was willing to accept. Had he done so, it is hardly probable complainant would have accepted the sum she did for the conveyance of her interest, when she could have realized more than double what she received, by accepting either proposition made to her trustee. Neither her counsel conducting the litigation on her behalf, nor her relatives, with whom, it is insisted, she advised as business agents, were informed of the offers that had been made to defendant concerning the title of the property, before the transaction was concluded.

It is not claimed that complainant had any actual knowledge of the facts before she made the conveyance to defendant's daughter of her interest in the land. Whatever may have been the motives of defendant, and whether he was misled by the efforts of John H. Bracken to obtain more than his fair proportion of the avails of the property, he must have known the funds with which the tax title was purchased belonged to the estate of John Bracken, and that he was chargeable as

trustee for the heirs, and that fact being established, the law would not permit him to deal with the trust property as his own. So far as the evidence in this record shows, the tax title was of as much value as the equitable title claimed, that was in litigation. The holder of the adverse title considered both, together, as nearly equal in value to one-half the property. It was using the trust property, whatever its real value was, with which to buy the outstanding title to defendant's benefit, that the law forbids.

It will be understood, no matter what the intention of defendant may have been, the transaction was for the benefit of the *cestuis que trust,* and the court correctly decreed that complainant, as one of them, was entitled to the benefit of the bargain in proportion to her interest in the trust property.

On another view, it may be conceded, a part of the funds with which the tax title was purchased belonged to defendant; but, still, we think the law is, if a party purchase lands with trust funds, and adds his own funds to the purchase money, a trust will result to the owner of the trust funds employed, and the burden will be upon the trustee to show the amount he had embarked in the enterprise; otherwise the *cestui que trust* will take the whole estate. *Seaman* v. *Cook,* 14 Ill. 501; Perry on Trusts, sec. 128. We find, here, no satisfactory evidence that defendant furnished any distinct share or aliquot part of the funds with which the tax title to the property was purchased.

No *laches* can fairly be imputed to complainant. It is proven she brought her bill to set aside her deed, and to have declared a trust in the property in her favor, within a year after the facts of the trust came to her knowledge. That was not unreasonable delay, as was ruled in an analogous case in this court (*Tyler* v. *Daniel,* 65 Ill. 316). There is proof she was dissatisfied soon after the delivery of the deed, in 1868, with the amount she had received for her interest in the property, but she had no knowledge, then, of the existence of the facts that would avoid the deed as between her and her trustee. That she may have deliberated before making the conveyance,

and advised with her counsel and relatives as to the propriety of making it, is more than probable, but neither she nor her advisers had any knowledge of the facts that established a trust in her favor, nor of the advantageous offers that had been made to her trustee for settling the litigation concerning the property. Whatever deliberation there may have been, was upon another phase of the case, and not upon the facts as disclosed in this record.

The decree is in accordance with those equitable principles that govern the relation of trustee and *cestui que trust*, is warranted by the testimony, and must, therefore, be affirmed.

*Decree affirmed.*