# Henderson's Adm'r *v.* Henderson's Heirs, &c.

*Proceedings in Probate Court to Settlement of Administratorship.*

*Administrator commingling funds of estate with his own; when accountable as for conversion.*—Where an administrator commingles funds of an estate with his own, so that the separate identity of the trust fund cannot be traced—as by depositing and keeping such money in bank, in his own name, with his own funds—he is accountable to the beneficiaries, at their option, as for a conversion; and this settled rule cannot be disturbed, however oppressive its operation may be in the particular case, or however pure the intention with which such deposit was made.

APPEAL from the Probate Court of Macon.

In the matter of Lemuel Henderson, administrator of the estate of John C. Henderson, against the heirs and creditors of John C. Henderson, the probate judge being incompetent, the Register in Chancery presided, and the following proceedings were had:

Said administrator moved the court to proceed to audit and allow his account as follows: "Lemuel Henderson, administrator of the estate of John C. Henderson, deceased, in account for final settlement of said estate, under a decree of insolvency rendered June 10th, 1867. Administrator first reporting that he did heretofore make a final settlement of his administration with the probate court of Macon county, but which settlement seems not to have been recorded, and no decree being found among the minutes of the court thereon, now submits the following account as a settlement of the same:

Administrator charges himself with amount reserved on partial settlement by order of the probate court of Macon county, in bank bills, May, 1861................\$1,000 00
Interest ...................................    855 02

                                            \$1,855 02

Administrator asks credit for amount funded in Confederate bonds, and which perished on his hands (disallowed).  ............................  .....................\$1,000 00

[Henderson's Adm'r v. Henderson's Heirs.]

| | | |
|---|---|---|
| Taxes. | 125 | 00 |
| Printer's fees | 4 | 00 |
| Administrator's commissions | 50 | 00 |

RECAPITULATION.

| | | |
|---|---|---|
| Amount of assets | $1,855 | 02 |
| Amount of credits allowed | 279 | 00 |
| Due by administrator | $1,576 | 02 |

In support of said account, he introduced proof that, in May, 1861, he made a partial settlement of said estate with said probate court, and the court ordered him to retain in his hand, from the assets of said estate, the sum of one thousand dollars, to await the result of a suit pending in the Circuit Court of Macon county, against said estate for about said sum, which was accordingly done. The sum retained consisted of bills upon the Central Bank of Alabama, and other banks of Alabama, not now remembered, together with some bills on the Bank of Charleston, South Carolina; that this money was deposited with the Tuskegee Insurance Company, which company was doing a banking business. He also, about the same time, deposited with said insurance company, several thousand dollars of similar funds of his own. That said suit in the Circuit Court did not terminate until March 14th, 1867; that during its pendency the said deposit remained undisturbed until sometime in 1864, when he received a notice from said company that they had suspended operations, and to come and draw out his deposit. He went and received for himself individually, and as administrator, Confederate States treasury notes for said deposits. He testified that he then considered said Confederate notes of equal, if not greater, value than the bank bills originally deposited, and acted in good faith and honestly believed he was promoting the interest of the estate thereby; that he acted with, and took care of, said funds just as he did with his own; that he never used any of said funds for himself in any manner; that after he received said funds he advised with an attorney, of good standing, what course to pursue; said attorney advised him to fund them in Confederate bonds, and he did so—with his own money and that of said estate, and of another estate of which he was administrator.

The books of said Tuskegee Insurance Company were put in evidence, showing the following account of said Henderson:

[Henderson's Adm'r v. Henderson's Heirs.]

LEMUEL HENDERSON.

| 1860. June 2, | To | ck, | $1500 | 00 | | Jan. 2, | By | bal. | $2,075 | 00 |
|---|---|---|---|---|---|---|---|---|---|---|
| " " 23, | " | dep't | 233 | 80 | | Jan. 25, | " | dep't | 1,100 | 00 |
| 1861. June 14, | " | ck | 412 | 55 | | Feb. 11, | " | " | 435 | 00 |
| " July 10, | " | " | 300 | 00 | | Ap'l 12, | " | " | 238 | 80 |
| 1862. Sept. 10, | " | " | 400 | 00 | | 1863. | | | | |
| 1863. Ap'l 27, | " | " | 1165 | 00 | | Ap'l 20, | " | " | 1165 | 00 |
| 1864. | " | " | 600 | 00 | | | | | | |
| | for bonds, | | 400 | 00 | | | | | | |

The aforegoing was substantially all the evidence in the case, except as to certain evidence showing the good faith of said Henderson in receiving Confederate money for the bank bills, and the value of said bills, &c.

The court rendered its decree, refusing to allow the administrator a credit of the amount funded in Confederate bonds, and also charged the appellant with interest. This decree, together with immaterial rulings on the evidence, is now assigned as error.

ABERCROMBIE & GRAHAM, for appellant.—From the proof shown, the court erred in charging the administrator with the amount funded by him in Confederate bonds. Executors and administrators acting in good faith, will be protected, and their conduct will not be subjected to such rigid rules as to deter all prudent men from assuming fiduciary relations.—*Gould v. Hays et al.* 19 Ala. 438, and authorities there cited; *Lowry & Bates v. Ferguson,* June term, 1877. The appellant acted the same with his own funds as with those of the estate.—See what the court says in *Key v. Jones,* 52 Ala. 248.

DAVID CLOPTON, and J. A. BILBRO, *contra.*—(No brief came to Reporter.)

STONE, J.—The case of *DeJarnette v. DeJarnette,* 41 Ala. 708, was conceded to be a hard case. Yet, because the trustee had commingled the trust funds with his own, so that the separate identity of the former could not be traced, he was held accountable for them as for a conversion, at the option of the beneficiary. That principle was fortified by a citation of authorities which we need not repeat here.—See, also, *McLeroy v. Thompson,* 42 Ala. 656. And it has been repeatedly held that if a trustee deposits trust funds in his own individual name, to his own individual credit, blended

with his own private funds, this constitutes a commingling of the funds within the rule declared above.

, The deposit account of appellant, which was put in evidence, shows that when he made his annual settlement in May, 1861, he had to his individual credit with the insurance company a deposit of about $2,300. He had no account as administrator. He had made no deposit within a year before, and he made no new deposit till April, 1863. Of the $2,300 to his credit in May, 1861, he drew $1,300 during the months of June and July, 1861, and September, 1862. This balance remained to his individual credit until 1864, when he checked it out. The loss, with which he seeks to charge the estate, according to the proof, was $1,000 of this $2,300. However oppressive it may seem under the facts of this case, the administrator cannot, under the long settled rules of law, obtain the credit he claims.

The testimony objected to was wholly immaterial, and did no harm.

Affirmed.