## JAMES H. JOHNSTON
### v.
## NELSON FLETCHER, CONSERVATOR, ETC.

*Trusts—Conservator—Insane Person—Dealings with Trust Property—Purchase of Outstanding Title.*

Moneys advanced by a trustee to purchase an outstanding title of property in which the *cestui que trust* has an equitable interest, will be treated in equity as so much advanced for the benefit of the *cestui que trust*, the trustee having a lien on the property until reimbursed for the advancement, and he must account for all profits arising out of the transaction.

[Opinion filed December 16, 1889.]

IN ERROR to the Circuit Court of Carroll County; the Hon. JOHN D. CRABTREE, Judge, presiding.

This was a bill in chancery, filed in the Circuit Court of Carroll County, to the March term thereof, A. D. 1886, by Nelson Fletcher, as conservator of one Robert Croom, against James H. Johnston, plaintiff in error.

The bill alleges that James H. Johnston, the plaintiff in error, defendant therein, was on or about the 7th day of July,

1880, duly appointed conservator of the person and estate of Robert Croom by the County Court of Carroll County, a jury in that court having declared that Croom was an insane person, unfit to have the management of his own property and affairs; that Johnston gave bonds, took the oath required and entered upon the discharge of his duties as such conservator, and remained conservator of that estate until the October term, A. D. 1885, of the Carroll County Court, when he was removed. That the complainant, Nelson Fletcher, was appointed conservator of that estate on or about the 22d day of July, 1886, as successor to James H. Johnston, and qualified and entered upon his duties as conservator of the estate.

That at the time defendant, Johnston, was appointed conservator of the estate of Robert Croom, Croom was in possession of the northeast quarter of the northwest quarter of section thirty-four (34), in township twenty-three (23), range five (5), east of the 4th P. M., in Carroll county, claiming an equitable interest therein and title thereto; that a suit was then pending in the Circuit Court of Carroll County, on the chancery side thereof, in the name and on the behalf of said Robert Croom, to set aside sundry conveyances of the land above described, on the ground of fraud and circumvention practiced upon him by one Orr F. Woodruff, in obtaining a certain mortgage for $500, out of which arose the subsequent conveyances of the land. That such suit was proceeding to a hearing and trial with a good prospect of overthrowing the Woodruff mortgage and all titles which had accrued and grown out of the same in the various assignees and grantees of Orr F. Woodruff; that instead of contesting that suit on behalf of his ward (Robert Croom), James H. Johnston, with full knowledge and notice of all the irregularities and frauds practiced by the defendants in the above mentioned suits to wrong, cheat and defraud Croom out of the land, and having been active in advising said Croom to commence that suit, suddenly paid R. S. Ely, who claimed to have the title of that land (and one of the defendants in the suit), the sum of $700 in full settlement and compromise of all matters involved in the suit and took to himself an absolute title to the land by a proper conveyance duly recorded.

Complainant charges that the $700 which the defendant paid to said Ely was considerably less than the actual value of the land at that time; that Ely sold the land for that price partly because of the relation he, Johnston, sustained to Croom, and for a further consideration that the defendant, as conservator of Croom, would dismiss the above mentioned suit, which was dismissed accordingly; that the conveyance of the land to Johnston was on or about the 5th day of January, A. D. 1881, and soon thereafter the defendant took possession of the land and received the rents and profits of the same for four consecutive years, and on or about the 18th day of February, 1885, sold and conveyed the land to one Samuel Senneff for the sum of $1,560; and although in procuring the land and title thereto from Ely, he used his own money to pay the consideration of $700, he is chargeable with and ought to account as conservator and trustee of the estate of Robert Croom not only for the rents and profits of the land while in his possession, but for the amount received for the sale of the land, less the money and interest which he invested in it, and reasonable expenses and compensation for his trouble. That Johnston has never paid any of the rents or profits arising from the use, occupancy or sale of the land to the orator or to the estate of Robert Croom, or to any one else, but to wrong, cheat and defraud the estate claims that he bought it in his own right and refuses to account for the same, etc.; prays that an account may be taken of what is now due and owing from Johnston to the estate of Robert Croom, on the sale of the land, and that an account may also be taken of the rents and profits received by the defendant, or by any other person in his behalf, or which, without his wilful neglect, might have been received by him since he entered into the possession of the premises, and that he be compelled to pay over the same, etc., and for general relief.

To this bill, the defendant, James H. Johnston, filed his answer, admitting his appointment and that acting as such conservator he purchased the land in the bill described for the sum of $700 and obtained title to himself, as charged; admitting that the value of the land at the time of such

purchase was considerable more than the price paid by him therefor, but insisting that as he purchased in his own right and paid his own money he should be protected, etc.

He further admits his knowledge of the pendency of the chancery suit regarding the title to the land of Croom at the time of his appointment as such conservator, and the nature, object and purpose of said bill; that answer was filed thereto; that at the next term of the court in which such proceedings were pending after the purchase of his ward's land by Johnston, the said bill was dismissed; admits that he sold this land to Senneff for $1,560, as charged in the bill, but denies substantially the other charges therein.

To this answer a replication being filed, the cause was heard on the bill, answer, replication and proofs taken and heard before the chancellor, and an interlocutory decree entered in which the court finds that the title to the land in the bill described was held by James H. Johnston, as trustee for Robt. Croom, for whom he was then acting as conservator, and that whatever profits he derived from the rents, issues and profits thereof and the moneys received from the subsequent sale thereof, as charged in the bill, belonged in equity to Robert Croom, his ward, and that the allegations in the bill were true in substance and effect, and ordered the cause to be referred to the master in chancery to take an account of what was equitably due and owing from the defendant, James H. Johnston, to the complainant. In stating such account the master was directed to charge Johnston with the rents and profits received by him during the time said land was in his possession and control, and with the amount he received upon the sale of said lands from Senneff, $1,560, and that the master credit Johnston with the $700 which he paid for the title, and with all taxes paid out of his own means while he was in possession of the land, as well as attorney's fees and expenses paid by the defendant of his own means upon the chancery suit, which he, as conservator of Robt. Croom, dismissed out of court in January, 1881, and for prosecuting the suit against Joseph T. Bell, to set aside the tax title on the lands of Croom, his ward. That the master

Johnston v. Fletcher.

in stating the account compute interest at six per cent per annum upon all items which enter into such account on both sides from the date of payment or the receipt of money to the first day of the then next ensuing term of the said Carroll County Circuit Court, as shown by the testimony taken or to be taken; that either party have leave to offer further testimony as to any and all items of payments or receipts which properly enter into such statement of accounts, and also what would be a reasonable sum to be paid for defendant's services, etc.

Pursuant to this interlocutory decree, the master, to whom the cause was referred on the first day of the next ensuing term of that court, being the 19th day of November, A. D. 1888, in strict pursuance of the directions contained in the interlocutory decree, made and filed in court an account stated and itemized between the parties, together with the additional proofs taken and heard before him, and the stipulations and agreements of the parties, in which the master found to be due and owing from James H. Johnston, as such former conservator of Robert Croom, to Nelson Fletcher, the present conservator of said Croom, as such conservator, the sum of $816.57, which report and the findings of the master the court fully approved and confirmed, and on the 30th day of November, 1888, entered a final decree therein, directing the payment of the sum so found to be due by Johnston, within thirty days from the date of that decree, with interest thereon at six per cent therefrom until paid, and that Johnston pay all the costs of the proceeding and suit, and in default that complainant have execution therefor. To which final and interlocutory decrees Johnston, defendant, excepted, and the case is now brought to this court by a writ of error, and errors are assigned upon the record.

Mr. James M. Hunter, for plaintiff in error.

Mr. C. B. Smith, for defendant in error.

Upton, P. J. The allegations of the bill are fully sustained by the evidence in every particular, and in addition thereto

the evidence shows that on the next day after Johnston obtained a deed of the land from Ely, Johnston went to the county seat and dismissed the chancery proceeding set out in the bill of complaint without consultation with the solicitors who were conducting the suit in the interest of Croom.

It seems that Croom was residing upon this land in the year 1881, with his family, and his cows, horses, hogs, and having other personal estate with which he was supporting his family comfortably, keeping them together. But as soon as Johnston got fairly invested with the title to the land he proceeds to take possession of all Croom's personal estate, even the hog which was then being prepared for the family use for food; sells the same at public auction, scatters the Croom family, and notwithstanding Johnston admits that the land was worth much more than what he paid to redeem it, at least $700 or $800 more, and the personal property sold at auction was appraised and estimated as to the value of some $562.50, all of which Johnston had in his hands and possession, he removed the old man Croom to the county poor house as a pauper. There does not appear to have been the slightest necessity or excuse even, for this heartless conduct. A more culpable and apparently fraudulent transaction can scarcely be imagined, than is shown by the facts in this record. The law is too well established and settled to require note or comment, further than to say, that trustees are never allowed to deal in the property intrusted to their care, or to make a profit therefrom. Whatever use is made of it by the trustee, if profit is derived, it is for the benefit of the beneficiary, and the trustee must account for it, no matter what form the transaction may assume.

While the trust continues unperformed, the trustee will not be permitted to purchase the property as a stranger might do, and in the dealings of the trustee with the property held in trust the burden rests upon the trustee to show the fairness of such dealings. Moneys advanced by a trustee to purchase in an outstanding title, will be treated in equity as so much advanced for the benefit of the beneficiary, and not for the benefit of the trustee, giving the trustee a lien on the

property until reimbursed for the advancement.   Ward v. Armstrong, 84 Ill. 151 ; King v. Cushman, 41 Ill. 31.

The decree of the court below was eminently just and proper, and could not upon any principle of justice and equity have been different, and it is affirmed in this court.

*Decree affirmed.*