ATTORNEY GENERAL *vs.* JOSEPH BEDARD & others.

Suffolk.   May 18, 1914. — June 17, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Charity. Trust. Attorney General. Equity Jurisdiction,* For an accounting. *Labor Union. Strike.*

If, at the time of a strike of many thousands of operatives employed in a manu-facturing centre, resulting in suffering and privation among them and their families, a committee, organized for the purpose of supporting the strike and also for the support of those strikers who were suffering and in want, appealed for funds for the relief of the strikers in want and received many thousands of dollars from many persons both in this Commonwealth and elsewhere who were moved by the appeal and by the suffering incident to the strike, and such committee expended a part of such money for purposes different from those for which it was contributed, such as salaries, board and personal expenses, legal expenses and counsel fees for some of their own number, transportation of children to other cities for the purpose of making further appeals, and con-tributions to a national organization of the strikers, it is the duty of the At-torney General, at the relation of some of the contributors, to enforce by an information in equity the application of the funds so raised to the charitable purposes for which they were contributed, and a demurrer to such an informa-tion, brought against the secretary, treasurer and other members of the com-mittee, must be overruled.

Where a committee, organized for the purpose of supporting a strike of many thousands of operatives in a textile manufacturing centre and also for the support of those strikers who are in suffering and want, in response to an ap-peal issued by them for money with which to relieve such want, receives a large fund for that purpose, those members of such committee who become the custodians and managers of the fund are under the same obligation as to the fund as if they expressly had been made trustees thereof; they must ac-count for it and can be credited in the accounting only with disbursements made for the purposes of the trust; they must be charged with everything for which they do not properly account; they are bound to keep the fund dis-tinguished from other moneys in their hands, and the consequences of any failure on their part to keep it so distinguished must fall upon themselves.

If the custodians and managers of such fund deliver to the chairman of their committee, who is not a custodian or manager but who was present during a large part of the strike and was the secretary of a national organization of the strikers, checks on the funds in a bank which are payable to third persons and which he knows are to be used for other purposes than those for which the fund was given, and such member receives the checks and delivers them to the payees, who thereupon receive the amount thereof, he is jointly responsible with the custodians and managers for the amount of those checks.

INFORMATION IN EQUITY, filed on March 11, 1912, by the Attorney General at the relation of James M. Prendergast, Herbert S. Johnson and Robert A. Woods against Joseph Bedard, Joseph Shaheen, William D. Haywood, Joseph J. Ettor, William Yates, William Trautmann and the Lawrence Trust Company.

Allegations of the information were in substance as follows:

For many weeks the many thousand operatives employed in the textile mills at Lawrence had been on a strike and during that period, because of lack of wages, a large number of them had come to be in suffering and distress for want of proper food and clothing. The personal defendants were leaders of the strike, or members of a "strike committee," organized for the purpose of supporting the strike, and, among other things, of raising funds to be applied for the support of those strikers who were suffering and in want. The defendant Bedard was the secretary and the defendant Shaheen was the treasurer of the strike committee.

For the purpose of raising a fund to be applied for the relief of such strikers as were in want, the personal defendants made and issued appeals to the public generally for contributions to the committee or its executive officers, representing that the funds would be applied by the committee and officers to the support of such of the strikers and their families as were in need, suffering and want. An appeal widely circulated read as follows:

"No.

"Help your fellow workers who need bread and your support.

"Twenty-five thousand men, women and children, employed in the textile mills of Lawrence, mostly employees of the American Woolen Co. are out on strike against a reduction in wages that at best was only an average of five to six dollars a week.

"The textile industry, especially the wool portion that receives the highest protection, pays the lowest wage scale of any industry in America.

"Workers have dared to rebel against conditions that were unbearable.  Because they have dared to assert their manhood and womanhood and determinedly insisted for an opportunity to live by their labor, hired military hessians have been sent to Lawrence to terrorize the workers into going back to work.

"We workers, who have done our utmost share to clothe the world, are now asking the world of labor and all those who sympathize with the cause of the workers for bread.

"Contribute liberally.  It is our fight to-day, who knows, it may be you to-morrow who will need support.

"Issued by authority of the Textile Workers' Strike Committee.

Joseph Bedard, Secretary,
9 Mason Street,
Lawrence, Mass.

Name                    Address                    Amount"

Many inhabitants of this Commonwealth and of other States, including the relators Prendergast and Johnson, being moved by such appeals and by sympathy for the poverty and suffering of the strikers and their families, and with a purpose and desire of aiding and benefiting such destitute persons, contributed for that purpose various sums of money amounting to many thousands of dollars, and delivered such sums to the defendant Bedard and to the other personal defendants to be held and used by them in trust to apply for the relief of the destitute and needy among the strikers and their families according to the tenor of the appeal above set out and other similar appeals.  The defendant Lawrence Trust Company was the depositary of such funds.

The fifth paragraph of the information was as follows: "5. The plaintiff is informed and believes, and upon information and belief avers, that all the personal defendants, conspiring and agreeing together, have used substantial portions of said fund contributed as aforesaid for purposes entirely different from those for which the fund was donated by the contributors, and for purposes other than the proper promotion of the objects of the trust on account of which said contributions were made and received; that said fund has, in part at least, been improperly used for the private and personal uses of the personal defendants and their associates; that the personal defendants, or some of them, have

drawn sums from said fund as salaries — a purpose for which they had no right to appropriate the same; that among other improper uses substantial amounts have been contributed for the board and other private expenses of the defendant Ettor, now in confinement in the jail at said Lawrence; large amounts have been paid for the transportation, to the city of New York and other cities, of numbers of children for uses in connection with appeals for further contributions to said fund; sums have been paid to counsel and others engaged in defending said Ettor and others against criminal charges; and that large amounts have been turned over to an organization known as Industrial Workers of the World; all of said uses being contrary to the intent and purposes for which said fund was contributed, and in violation of the trust upon which said fund is held. There is danger that said fund, and other contributions thereto, may be further appropriated to uses other than those for which it is contributed, and further dissipated in illegal, improper expenditures, in violation of the trust."

The information further alleged a demand for an accounting and a failure to render an adequate accounting.

The prayers of the information were for temporary and permanent injunctions preventing the use of the fund for other purposes than those for which it was given, for a receiver to take charge of the fund, and "that an account be taken in relation to said trust fund and the amount thereof, and that an inquiry be made as to the extent of improper and illegal disbursements from said fund by the defendants, or any of them, or others controlling the same, and that the said defendants be made to account for and restore to said fund all sums improperly abstracted therefrom, and pay over to such receiver such amounts of said fund as shall have been found to have been wrongfully taken therefrom."

The personal defendants demurred. The demurrers were heard by *Morton*, J., and were overruled. The defendants appealed.

The case was referred to Winfield S. Slocum, Esquire, as master. He filed a report, and, upon a recommittal, a supplemental report. His findings as to the strike in Lawrence, the description of the personal defendants' official positions and the form of appeals for funds by the defendants were substantially in accord-

ance with the allegations of the information. Other material findings were as follows:

The strike in the Lawrence textile mills began on January 12 and ended on March 16, 1912. During the period of the strike the strike committee, described in the bill, received $62,564.40, "a large portion, but not all," of which was "received . . . in answer to the appeal" described on pages 379, 380.

The supplemental report of the master contained the following findings: "After the receipt of such funds they were so commingled and used that I am unable to find or state for what they were contributed excepting the following: During the period of the strike, meetings were held and money raised by the Socialists of Boston for general strike purposes. The amount of such funds so contributed was $3,316.01. This amount was paid in and mingled with the general fund."

"All sums received from whatsoever source were mingled in one common fund.

"The offices of the strike committee were at No. 9 Mason street, Lawrence. In these offices correspondence was received and sent, the appeals for help were distributed, money was received and disbursed, the books of account were kept, and the financial business of the strike conducted. The defendant Shaheen was treasurer of the strike committee and was responsible for its funds. He signed checks, went to said headquarters nearly every day, and he also made some of the deposits in the bank. All checks were signed by Shaheen as treasurer, and by the defendant Joseph Bedard as financial secretary. Bedard was in general charge from the beginning of the strike to its end, was the financial secretary, and in charge of the headquarters. Funds in general were received by him, and were in his custody and deposited by him in bank. The defendants William Trautmann and William Yates were sent to Lawrence from the national headquarters of the Industrial Workers of the World because of their experience in affairs of this kind. Trautmann came about February 10, and took charge of and established the system of bookkeeping. He received some of the money, made some of the deposits in bank, and attended to and supervised the correspondence. Yates was secretary of the National Industrial Union of Textile Workers. He was chairman of the strike committee at Lawrence, and was

there from January 29 to the end of the strike. To some extent he also attended to the correspondence. . . .

"A large part of the money was deposited in the Lawrence Trust Company, in the name of the Industrial Workers of the World, Local No. 20. Other sums were not deposited in bank, but were kept or used as cash.

"I find that all of these defendants were responsible for such commingling of funds.

"They failed also to·show, in respect to such funds in their possession or subject to their control, what amounts were contributed for charitable purposes and what amounts were contributed for other objects."

Of the funds so received, the master found that $18,695.86 was expended for other than charitable purposes. Of this sum, $2,800 was represented by a check payable to one Vincent St. John of Chicago, Illinois, who was secretary of the national organization of the Industrial Workers of the World, and $3,000 by a check payable to one Thomas Powers, a textile worker of Providence, Rhode Island, both checks being given to Yates. The master found Yates responsible for these two sums, and found Shaheen, Bedard and Trautmann responsible for the entire $18,695.86.

The master also found that of the foregoing sum $10,800 was deposited by Bedard in the bank in his own name, and that from that account he drew the above described checks for $2,800 payable to St. John and $3,000 payable to Powers, which were given to the  defendant Yates, and also a check for $5,000 payable to one Desire Steuer of Lawrence.

The master also found that there was no evidence that any of the moneys received by the committee were received or paid to the defendants Ettor or Haywood.

Exceptions of the defendants to the first report of the master were waived by them.

The defendants Bedard and Shaheen filed exceptions to the supplemental report of the master, the first two grounds in both exceptions being the same. Only the exceptions of Shaheen contained a third ground. Shaheen's exceptions were upon the following grounds:

"1. That the master failed to credit the total amount expended

for other purposes than relief with the $3,316.01 contributed by the Socialists for general purposes.

"2. The refusal of the master to rule, as requested, that the total amount expended for purposes other than relief should be credited with the excess expenditures amounting to $2,886.40.

"3. That he [Shaheen] is responsible for the $10,800 deposited by Joseph Bedard in the Lawrence Trust Company and for the drafts issued thereon."

The exceptions were heard by *Loring,* J. The record states an interlocutory decree overruling Shaheen's exceptions, but states no decree as to those of Bedard.

A final decree was entered, declaring "that said defendants Bedard, Trautmann, and Shaheen are jointly and severally liable to account for the sum of $18,695.86, which was found by the master's report to have been paid out of strike funds for purposes other than relief, less the sum of $3,316.01 found to have been contributed for general purposes, leaving a balance of $15,379.85; also that said defendant Yates is liable to account for the sums of $2,800 and $3,000, paid out of strike funds and not accounted for, as found by the master;" and ordering "that the said defendants, Bedard, Trautmann, and Shaheen pay into the hands of the clerk of this court, to be held by him subject to the further order and direction of this court, said sum of $15,379.85, together with interest thereon from the date of the filing of the bill in this cause until fully paid; and that the defendant Yates pay into the hands of the clerk of this court, to be held by him, subject to the further order and direction of this court, said sum of $5,800, together with interest thereon from the date of the filing of the bill in this cause until fully paid; and that the plaintiff also recover his costs against said defendants Bedard, Yates, Trautmann, and Shaheen." The bill was dismissed as against the defendants Ettor and Haywood and the Lawrence Trust Company, with costs.

The defendants Yates, Bedard and Shaheen appealed.

The case was submitted on briefs.

*J. F. Lynch, J. P. S. Mahoney & G. E. Roewer, Jr.,* for the defendants Yates, Bedard and Shaheen.

*J. R. Dunbar, R. W. Dunbar & F. Leveroni,* for the plaintiff.

SHELDON, J. The demurrer rightly was overruled. According

to the averments of the bill, the fund in question was raised by subscriptions as a relief fund, to relieve the necessities of a very great number of men who had engaged in a strike, and who thus had been left without any means of maintaining themselves and their families. The fund was raised and should be applied for the purposes of a public charitable trust. *Jackson* v. *Phillips*, 14 Allen, 539, 556. *Attorney General* v. *Goodell*, 180 Mass. 538. *Attorney General* v. *Compton*, 1 Y. & C. Ch. 417. *Attorney General* v. *Kell*, 2 Beav. 575. It was upon the Attorney General that the duty rested of enforcing the proper application of the fund and of compelling the restitution of any part thereof which had been diverted to other purposes. R. L. c. 7, § 6. *Parker* v. *May*, 5 Cush. 336, 337. *Burbank* v. *Burbank*, 152. Mass. 254. *Attorney General* v. *Vivian*, 1 Russ. 226. *Attorney General* v. *Cockermouth Local Board*, L. R. 18 Eq. 172. *Strickland* v. *Weldon*, 28 Ch. D. 426. And see *McQuesten* v. *Attorney General*, 187 Mass. 185. And the occasion for the present application, the misappropriation of the fund by the defendants, is sufficiently averred. *Attorney General* v. *Parker*, 126 Mass. 216. *Attorney General* v. *Bishop of Manchester*, L. R. 3 Eq. 436.

The defendants' exceptions to the master's first report were waived, and those exceptions accordingly have been overruled by a decree from which no appeal has been taken.

The exceptions of the defendant Bedard to the master's supplemental report do not appear by the record before us to have been formally decided; but they really were disposed of by the action taken on the exceptions of the defendant Shaheen and by the final decree, which did not charge the defendants Bedard, Shaheen, Trautmann and Yates (hereinafter called the defendants) with any part of the sums contributed for general purposes. The failure to take formal action upon Bedard's exceptions is not material now, but it should be corrected.

The action taken on Shaheen's exceptions was sufficiently favorable to the defendants. The evidence heard by the master is not reported, and we cannot say that his findings were wrong. The defendants received the money in question as a trust fund. They must account for it, and can be credited only with disbursements which actually were made for proper purposes. They must be charged with everything for which they have not prop-

erly accounted. This is a sound principle, and is abundantly supported by authority. *Little* v. *Phipps*, 208 Mass. 331, 335. *Ashley* v. *Winkley*, 209 Mass. 509, 525. *Watson* v. *Thompson*, 12 R. I. 466, 470. *Blauvelt* v. *Ackerman*, 8 C. E. Green, 495, 502. *Frethey* v. *Durant*, 24 App. Div. (N. Y.) 58, 61. *Seaward* v. *Davis*, 133 App. Div. (N. Y.) 191. *Ward* v. *Armstrong*, 84 Ill. 151. *Chirurg* v. *Ames*, 138 Iowa, 697. It was for the defendants to keep the trust fund distinguished from other moneys in their hands; and the consequences of any failure on their part to comply with this duty must fall upon themselves. *International Trust Co.* v. *Boardman*, 149 Mass. 158, 163. *Snailham* v. *Isherwood*, 151 Mass. 317, 321. *Henderson* v. *Henderson*, 58 Ala. 582. *Lupton* v. *White*, 15 Ves. 432.

We cannot doubt that the defendants, the custodians and managers of this fund, are under the same obligations as if they expressly had been made the trustees thereof. *Attorney General* v. *Compton*, 1 Y. & C. Ch. 417, 426. *In re Hallett's estate*, 13 Ch. D. 696. *Dillon* v. *Connecticut Mutual Life Ins. Co.* 44 Md. 386.

The defendant Yates rightly is held for the amount which came to his hands. He took it without consideration, and must be taken to have had notice of the trust upon which it was held. *Otis* v. *Otis*, 167 Mass. 245. But as this is a part of the amount for which the other defendants have been held liable, the decree should be so modified as to make it plain that no double payment is required.

As there has been no appeal by the Attorney General, we cannot consider whether costs rightly were allowed to the defendants Ettor and Haywood.

What we have said disposes of all the material questions. It is not necessary now to determine what disposition finally shall be made of the money ordered to be paid into court.

The decree appealed from must be modified by inserting a statement that Bedard's first exception to the master's supplemental report is sustained and his second exception overruled; by ordering the payment into court of the sum of $5,800, with interest, by the defendants Bedard, Trautmann, Shaheen and Yates, and of the further sum of $9,579.85, with interest, by the defendants Bedard, Trautmann and Shaheen; and by stating the

amount of the costs ordered to be paid.  So modified, the decree must be affirmed with costs against the defendants Yates, Bedard and Shaheen, being the only parties who have appealed from the decree.

*So ordered.*