WILLIAM E. L. DILLAWAY *vs.* HIRAM M. BURTON
& another, trustees, & others.

ROBERT B. BRIGHAM HOSPITAL FOR INCURABLES *vs.*
ATTORNEY GENERAL.

Suffolk.    March 25, 1926. — June 30, 1926.

Present: BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Charity. Attorney General. Equity Pleading and Practice*, Bill, Parties.
*Equity Jurisdiction*, Bill for instructions. *Words*, "Citizen," "Chronic,"
"Incurable."

A bill in equity, by one of three trustees under a will which directed that
income of the trust be paid to a certain hospital corporation, of which
the plaintiff also was a member, "to the uses and purposes of said
Corporation forever," against the plaintiff's cotrustees under the will
and the trustees under the will of the founder of the hospital trust, cer-
tain individuals and the corporation, in which the plaintiff alleged that
the individuals were exploiting the corporation, that further funds
should not be paid to the corporation by the trustees under the two wills,
and that the trustees under the founder's will had failed to file accounts
in the Probate Court and had acted wrongfully in certain sales of real
estate and in investing the funds, is multifarious.

A trustee under a will which directs that the income of the trust shall be
paid to a certain Massachusetts corporation carrying on a hospital in
this Commonwealth, "to the uses and purposes of said Corporation
forever," has no interest, other than that of the general public, in the
income of the trust fund after it has been paid to the hospital corpora-
tion.

It is the exclusive function of the Attorney General by the institution
of proper proceedings to correct abuses in the administration of a
public charity; the sole trustee above described cannot maintain a bill in
equity for such purpose and has no right to intervene in a suit brought
by the corporation for instructions.    Distinguishing *Eustace* v. *Dickey*,
240 Mass. 55; *Trustees of Andover Seminary* v. *Visitors*, 253 Mass. 256,
301; and *Harvard College* v. *Attorney General*, 228 Mass. 396.

The power and duty delegated to the Attorney General to enforce the
proper application of charitable funds are a recognition by the Legisla-
ture not only of his fitness as a representative of the public in cases of
that kind, but of the necessity of protecting public charities from being
called upon to answer to proceedings instituted, with or without just
cause, by individuals who have no private interests distinct from those
of the public.    Per CROSBY, J.

The question, whether a motion to intervene in a suit in equity shall be
allowed, ordinarily rests in the sound judicial discretion of the presiding

judge, and his decision will not be reversed unless it clearly appears that there has been an abuse of such discretion.

In a suit in equity by a Massachusetts corporation for instructions, it appeared that the corporation was founded in accordance with directions in a will containing bequests to many hospitals and other institutions for the benefit and relief of aged, infirm· and afflicted persons, but no bequests to any institution maintained for the treatment of chronic diseases, except the establishment of a trust whose income should be paid to a corporation to be organized "for the purpose of maintaining an institution for the care and support and medical and surgical treatment of those citizens of Boston who are without necessary means of support and are incapable of obtaining a comfortable livelihood by reason of chronic or incurable disease or permanent physical disability, and for the purpose of managing and expending such moneys and other property as said corporation may receive for the above purposes, and of doing all other acts incidental to the maintenance of the charity herein described." The plaintiff was instructed as follows:

(1) The words, "citizens of Boston," mean all persons who are citizens of the United States and who are domiciled in Boston;

(2) Women and children may· be admitted to the hospital in such numbers as in the judgment of the plaintiff is deemed proper, but not to the exclusion of a reasonable number of adult male applicants, provided such women and children are otherwise qualified for admission under the terms of the will of the testator;

(3) The words "chronic" and "incurable" are not synonymous; an applicant suffering from a chronic disease, and otherwise proper to be admitted under the terms of the will, is not to be denied admission, merely because in the opinion of the hospital physicians there is a reasonable probability that by scientific and specialized treatment such person's condition may be alleviated or cured so that the patient may be able to care for himself thereafter outside the hospital;

(4) The plaintiff is not required to divide its hospital accommodations in fixed proportions for the care of its several classes of patients, but should provide accommodations for the three classes of persons described in the will in such manner as will result in the greatest benefit to each class;

(5) Applicants for admission to be eligible need not be entirely destitute of all property; nor are they to be excluded if they have friends or relatives legally bound to support them, but who refuse to do so; but, if an applicant has friends or relatives who are not only able but willing to support such applicant comfortably and furnish proper medical and surgical treatment outside the hospital, such applicant should not be admitted.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 3, 1925, and on October 13, 1925, and described in the opinion.

Demurrers filed in the first suit and described in the opinion were heard by *Carroll*, J., who ordered them sus-

tained and, under G. L. c. 214, § 30, reported his ruling to the full court for determination before further proceedings in the suit.

A motion by the plaintiff in the first suit for leave to intervene in the second suit also was heard by *Carroll,* J., and was denied. The Attorney General, the only defendant in the second suit, having filed an answer, that suit was reported to the full court for determination of all questions raised by the record.

All material facts are stated in the opinion.

*D. L. Smith,* for Dillaway.

*A. D. Hill,* for Robert B. Brigham Hospital for Incurables.

*M. F. Weston,* Assistant Attorney General, for the Attorney General.

CROSBY, J. The first case, a suit in equity, is brought by the plaintiff as one of the three trustees under the will of Elizabeth F. Brigham, and also as a member of the defendant corporation Robert B. Brigham Hospital for Incurables, against his cotrustees under said will, the three trustees under the will of Robert B. Brigham, the Robert B. Brigham Hospital for Incurables, Joel E. Goldthwait and the Attorney General. The bill was filed September 3, 1925, and alleges that the above named hospital, a charitable corporation organized under the terms of the will of Robert B. Brigham, is being conducted, and that the charity is being administered, in a manner contrary to the terms of the will. The prayers of the bill are that the defendants be enjoined and restrained from the continuance of such alleged unlawful acts, and for other relief. The bill alleges that all the facts recited therein were presented to the Attorney General, who was requested to intervene and make application to this court for the relief of the alleged mismanagement and abuses set forth in the bill, but that the Attorney General declined to comply with the request.

The will of Robert B. Brigham provided for the establishment of a charitable corporation, and on February 11, 1903, a corporation was organized under R. L. c. 125, for the following purposes as set forth in its charter: "for the purpose of maintaining an institution for the care and support

and medical and surgical treatment of those citizens of
Boston who are without necessary means of support and are
incapable of obtaining a comfortable livelihood by reason
of chronic or incurable disease or permanent physical dis-
ability, and for the purpose of managing and expending such
moneys and other property as said corporation may receive
for the above purposes, and of doing all other acts incidental
to the maintenance of the charity herein described."

By the thirteenth paragraph of the will three persons were
named as trustees, to whom all the rest and residue of the
testator's estate was devised in trust for the purposes therein
described.  By the fifth clause of this paragraph it was
provided as follows: "All the rest and residue of the net
income of my said estate, after the payment of the legacies
hereinbefore recited, I direct my said trustees to pay to a
corporation which shall be organized by them in the follow-
ing manner and for the charitable purposes hereinafter
described."  The will then describes the manner in which
and the purposes for which the corporation shall be con-
ducted and maintained.  The rest and residue of the income
has been paid over to the corporation since its organization.

By the second section of the twelfth paragraph of the will
of Elizabeth F. Brigham (who was a sister of Robert B.
Brigham), she provided as follows: "I direct that all the
rest, residue and remainder of the net income of my estate
shall be paid to the Robert B. Brigham Hospital for Incur-
ables of said Boston to the uses and purposes of said Cor-
poration forever.  In making this disposition of my estate,
I take into consideration the fact that the greater part of
my property was given me by my late brother, Robert B.
Brigham, and I consider it my duty to leave the same for
the uses and purposes of the Hospital established under his
will."  The will devised all the rest and residue of the estate
to three trustees in trust for the uses and purposes therein set
forth.  The plaintiff was named as one of the trustees and
is now acting as such.  The trustees have paid over to the
hospital corporation the rest and residue of the net income
of the estate as provided in the will of Elizabeth F. Brigham
until this time.  After describing various alleged abuses in

the management of the hospital, the bill in the eleventh paragraph alleges that the plaintiff is in doubt as to his duty in the premises as a trustee, particularly as to whether he should pay over or permit the payment of the income of the trust to the hospital corporation "while it uses the said income or any of its funds for purposes other than those described in both said wills or in the manner hereinbefore set forth."

The defendants severally demurred to the bill alleging as grounds of demurrer (1) that it is multifarious, (2) want of equity, and (3) that the plaintiff has no interest or standing to maintain it either as trustee under the will of Elizabeth F. Brigham or as a member of the hospital corporation. The case was heard before a single justice of this court who ordered an interlocutory decree to be entered sustaining the demurrers and reported the questions raised thereby for determination by this court.

The bill is multifarious. In one bill the plaintiff seeks relief against his cotrustees under the will of Elizabeth F. Brigham, and against the trustees under the will of Robert B. Brigham, on the ground that the hospital corporation is being maintained in violation of the terms of its charter and the respective wills of the donors; and also that the defendant Goldthwait, a physician, is a member of the defendant corporation and its board of directors and its executive and medical committees, and is in practical control of the corporation, and with the defendants Schirmer and Burton is exploiting the corporation for their personal advantage. The bill also alleges that the trustees under the will of Robert B. Brigham have failed to file in the Probate Court, as required by law, accounts of their trusteeship; that in violation of their duties they have made sales of real estate held by them as trustees; and that they have invested funds of the corporation without adequate and sufficient security. The three allegations last above referred to are matters respecting which the trustees are responsible to the Probate Court. The charges against Dr. Goldthwait are matters for the corporation itself or for the Attorney General to deal with. The various allegations relate to several distinct and wholly unrelated matters. It follows that the bill is multifarious.

*Davis* v. *Peabody*, 170 Mass. 397. *Saltman* v. *Nesson*, 201 Mass. 534, 539. *Reno* v. *Cotter*, 236 Mass. 556, 563. *Krauthoff* v. *Attorney General*, 240 Mass. 88, 92.

G. L. c. 12, § 8, provides that the Attorney General "shall enforce the due application of funds given or appropriated to public charities within the Commonwealth, and prevent breaches of trust in the administration thereof." The plaintiff and his cotrustees under the will of Elizabeth F. Brigham are trustees of a charitable trust, and it is their duty to pay over to the hospital corporation the income which they receive in accordance with the terms of the will. When the income has been so paid their duties in connection therewith are at an end. The plaintiff has no interest in the trust fund after it has been paid to the hospital, other than that of the general public. It is well settled that it is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings. It is his duty to see that the public interests are protected and to proceed in the prosecution or to decline so to proceed as those interests may require. *Sanderson* v. *White*, 18 Pick. 328, 339. *Parker* v. *May*, 5 Cush. 336. *Burbank* v. *Burbank*, 152 Mass. 254. *Attorney General* v. *Bedard*, 218 Mass. 378, 385. *Crawford* v. *Nies*, 224 Mass. 474, 490. *Krauthoff* v. *Attorney General, supra.*

In this connection it was said in *Burbank* v. *Burbank, supra*, at page 256: "But the law has provided a suitable officer to represent those entitled to the beneficial interests in a public charity. It has not left it to individuals to assume this duty, or even to the court to select a person for its performance. Nor can it be doubted that such a duty can be more satisfactorily performed by one acting under official responsibility than by individuals, however honorable their character and motives may be." The decision in *Eustace* v. *Dickey*, 240 Mass. 55, which holds at pages 85 and 86 that this court has jurisdiction, in the absence of the Attorney General, in a suit concerning respective powers of persons who have direct interests and duties to perform in the management of a charity, is not at variance with the general rule, hereinbefore stated. That rule has been held applicable to

cases of donors or grantors of property devoted to charitable uses. *Kemper* v. *Trustees of Lane Seminary,* 17 Ohio, 293. *Strong* v. *Doty,* 32 Wis. 381. *Clark* v. *Oliver,* 91 Va. 421. *Nelson* v. *Monitor Congregational Church,* 74 Ore. 162. It has been held applicable to heirs or other representatives of such donors or grantors. *Sanderson* v. *White, supra.* *McKenzie* v. *Trustees of Presbytery of Jersey City,* 1 Rob. (N. J.) 652, 677. *Petition of Burnham,* 74 N. H. 492. *Brigham* v. *Peter Bent Brigham Hospital,* 134 Fed. Rep. 513, 517. It has been applied to citizens of a municipality having no peculiar and immediate interests distinct from those of the public in the particular charity. *Attorney General* v. *Parker,* 126 Mass. 216, 221. *Burbank* v. *Burbank, supra.*

This court has held that a board of visitors may have such special powers and duties in connection with the general visitorial functions that it may maintain a bill in equity to correct the administration of a charity. *Trustees of Andover Seminary* v. *Visitors,* 253 Mass. 256, 301. But in the case at bar the plaintiff is not a visitor, and is without any visitorial powers as trustee under the will of Elizabeth F. Brigham. The charity was created by the will of Robert B. Brigham, who granted full visitorial powers to the trustees of the hospital corporation. Elizabeth F. Brigham, from whose will the plaintiff derives his standing, did not found the hospital; she merely contributed to it. The plaintiff as a member of the corporate defendant has no standing to maintain the bill; he and his fellow members are represented by the corporation. The issues raised by the bill do not involve his private interests as a member of the corporation, but pertain to matters in which only the public interest represented by the Attorney General is directly concerned. There is nothing in *Harvard College* v. *Attorney General,* 228 Mass. 396, at variance with the conclusion here reached.

While in the eleventh paragraph of the bill the plaintiff alleges that he is in doubt as to his duty as trustee and as to whether he should pay or permit the payment of income of the trust to the corporation, he does not pray for instructions, and the bill cannot properly be construed as a petition therefor. If this proceeding could be construed as a bill in equity

for instructions, no injunction could issue against the corporation or its officers as prayed for. It is apparent that the frame of the bill is designed to enjoin those officers from the maintenance of the hospital as at present conducted and to bring about the removal of certain of its officers, and must be so construed.

The power and duty delegated to the Attorney General to enforce the proper application of charitable funds are a recognition by the Legislature not only of his fitness as a representative of the public in cases of this kind, but of the necessity of protecting public charities from being called upon to answer to proceedings instituted by individuals, with or without just cause, who have no private interests distinct from those of the public.

It follows that the demurrer was rightly sustained on all the grounds alleged.

The second case is a bill in equity for instructions brought by the Robert B. Brigham Hospital for Incurables against the Attorney General. William E. L. Dillaway (the plaintiff in the first case), as a member of the hospital corporation and one of the trustees under the will of Elizabeth F. Brigham, filed a motion that he be allowed to intervene and become a respondent and file an answer. The case came on to be heard before a single justice, who ordered an interlocutory decree to be entered denying the motion for leave to intervene, and reported the case to this court upon the questions raised by the record, including the appeal from the interlocutory decree denying the motion to intervene, and reserved for the consideration of the court the questions presented by the bill and the answer of the Attorney General. Before the bill was filed in either of these cases, the Attorney General, in response to an application made to him by the mayor· of Boston for an information to procure the proper execution of the public charity created by the will of Robert B. Brigham, made an extended investigation and held numerous public hearings respecting the management of the hospital. He thereafter filed a report of his findings, and denied the application. A copy of this report is annexed to the bill for instructions.

The plaintiff seeks instructions as to the proper interpretation of the will of Robert B. Brigham (the founder of the charity administered by the plaintiff), and prays that it may be instructed as to whether it has acted in accordance with the correct construction of said will. The answer filed by the Attorney General admits the facts alleged in the bill and sets forth what he contends is the proper construction of the provisions of the will so far as they relate to the duties of the plaintiff. The motion to intervene was rightly denied by the single justice. The correctness of that action appears in what was said in the first case, where it is held that Mr. Dillaway had no standing to maintain that bill. The grounds alleged in the motion to intervene so far as material are fully set forth in the bill in the first case. That the Attorney General represents the public interest in the enforcement of the proper application of public charitable funds and it is only through him that action may be taken in matters affecting the public interest in the administration of a charity has been fully considered in the first case and need not be again discussed. *Sanderson* v. *White, supra. Parker* v. *May, supra. Burbank* v. *Burbank, supra. Attorney General* v. *Bedard, supra. Crawford* v. *Nies, supra. Krauthoff* v. *Attorney General, supra.* G. L. c. 12, § 8.

Manifestly the plaintiff in the first case, who had no standing to maintain his bill either as a trustee under the will of Elizabeth F. Brigham or as a member of the hospital corporation, cannot properly be allowed to intervene in these proceedings brought by the corporation for instructions. As a general rule only persons whose interests are in issue and would be affected by the decree are proper parties to a bill in equity. *Cassidy* v. *Shimmin,* 122 Mass. 406, 409. *Michigan State Bank* v. *Gardner,* 3 Gray, 305, 308. *Consolidated Gas Co. of New York* v. *Newton,* 256 Fed. Rep. 238. *Krauthoff* v. *Attorney General, supra.* Mr. Dillaway, neither as trustee nor as a member of the hospital corporation, has any interest in the bill for instructions and his motion to intervene was rightly denied. Besides, the question whether a motion to intervene shall be allowed ordinarily rests in the sound judicial discretion of the presid-

ing judge, and his decision will not be reversed unless it clearly appears that there has been an abuse of such discretion.

Robert B. Brigham's will provided that "Said corporation [the plaintiff] shall be known as The Robert B. Brigham Hospital for Incurables, and shall be organized for the purpose of maintaining an institution for the care and support and medical and surgical treatment of those citizens of Boston who are without necessary means of support and are incapable of obtaining a comfortable livelihood by reason of chronic or incurable disease or permanent physical disability, and for the purpose of managing and expending such moneys and other property as said corporation may receive for the above purposes, and of doing all other acts incidental to the maintenance of the charity herein described."

The first inquiry for instructions is, What persons are included in the words "citizens of Boston" as used in the paragraph of the will last quoted? There are certain words of fixed and definite meanings; and others where the meanings are dependent upon the connection in which the words are used. In *Borland* v. *Boston*, 132 Mass. 89 (which was a tax case involving the question of domicil), it was said at page 93, "'Citizenship,' 'habitancy' and 'residence' are .severally words which may in the particular case mean precisely the same as 'domicil,' but very frequently they may have other and inconsistent meanings; and while in one use of language the expressions a change of domicil, of citizenship, of habitancy, of residence, are necessarily identical or synonymous, in a different use of language they import different ideas." The word "citizen" is not a term of exact meaning; it may be used to describe an inhabitant of a city or town who enjoys its freedom and privileges, as distinguished from an alien or one not entitled to political privileges. It may be used to describe a person, native or naturalized of either sex, who owes allegiance to the government and is entitled to reciprocal protection from it as distinguished from an alien. A person may be a citizen in the sense that as such he is entitled to the protection of his life, liberty and property, although he may not necessarily be vested with the suffrage or other political rights.

The Fourteenth Amendment to the Federal Constitution provides that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside . . . ." G. L. c. 1, § 1, is as follows: "All persons who are citizens of the United States and who are domiciled in this Commonwealth are citizens thereof." These definitions describe the persons who are entitled to political privileges and who owe allegiance to the nation and the Commonwealth. In view of the language used by the testator, it does not appear that it was his intention to include aliens as "citizens of Boston." The beneficent objects which the founder of the charity had in mind are manifest, but the persons who are to receive support, medical and surgical care and treatment in the hospital are not so obvious. If aliens who happened to be living in Boston were intended by the founder to be entitled to care, support and treatment, it would be more natural for him to have described those qualified to be admitted in more general terms as "persons residing in Boston" or by some similar language. We find nothing in the will itself to indicate the testator's intention in this respect apart from the words which he used to describe them, namely, "citizens of Boston." Accordingly . we are of opinion that those words as used in the will signify persons who are citizens of the United States as defined by the Fourteenth Amendment and who are domiciled and resident in Boston. Ordinarily the word "citizen" is not applied to aliens, and we find nothing in the will to indicate that it was intended to be used otherwise than in its usual sense. The plaintiff should make reasonable investigation and satisfy itself that applicants, before being admitted, are citizens of Boston as herein defined.

The will does not specify the sex or age of persons to be admitted to the hospital. Accordingly, women and children may be admitted in such numbers as in the judgment of the plaintiff is deemed proper. Such applicants, however, are not to be admitted to the exclusion of a reasonable number of adult male applicants. All women and children so admitted are to be persons who are eligible within the descrip-

tion in the testator's will of persons to be supported and cared for. The plaintiff is so instructed.

The persons to be admitted to the hospital are described as "those citizens of Boston who are without necessary means of support and are incapable of obtaining a comfortable livelihood by reason of chronic or incurable disease or permanent physical disability." The words "chronic" and "incurable" are not synonymous. A person suffering from a chronic disease may be benefited by scientific or specialized treatment and eventually be cured. The word "chronic" as applied to a disease means that it is of long duration as distinguished from an acute disease. *Blumenthal* v. *Berkshire Life Ins. Co.* 134 Mich. 216, 219. *Coffey* v. *Northwestern Hospital Association,* 96 Ore. 100. There is nothing in the will to indicate that the testator used the word "chronic" other than in accordance with its usual and ordinary meaning. A chronic disease is not necessarily incurable. By use of the word "or" between the words "chronic" and "incurable" it does not follow that the diseases were intended as synonymous, nor does the fact that the testator made bequests to many hospitals for the treatment of acute diseases and conditions control the plain meaning of the language used. A careful examination of the will shows that the testator made bequests to many hospitals and other institutions for the benefit and relief of aged, infirm and afflicted persons. It is of some significance, however, that he made no bequests to any institution maintained for the treatment of chronic diseases. It is a reasonable inference that he realized the need of a hospital for the care and treatment of such diseases. The plaintiff is instructed that an applicant suffering from a chronic disease is not to be denied admission, if in the opinion of the hospital physicians there is a reasonable probability or possibility that by scientific and specialized treatment such person's condition may be alleviated or cured so that the patient may be able to care for himself thereafter outside the hospital.

The plaintiff is not required to divide its hospital accommodations in fixed proportions for the care of its several classes of patients, but should provide accommodations for

the three classes of persons described in the will in such manner as will result in the greatest benefit to all.

The persons eligible for admission to the hospital are described as those "who are without necessary means of support and are incapable of obtaining a comfortable livelihood by reason of chronic or incurable disease or permanent physical disability." We are of opinion that applicants to be eligible need not be entirely destitute of all property. Nor are they to be excluded if friends or relatives legally bound to support them refuse to do so; but if an applicant has friends or relatives who are not only able but are willing to support him or her comfortably and furnish such applicant with proper medical and surgical treatment outside the hospital, such person should not be admitted. The plaintiff is so instructed.

The plaintiff in charge of the administration of the charity by its officers and directors cannot lawfully act in a manner contrary to the intention of the donor as expressed in his will; but, within the limits of the language used, the plaintiff, in determining the recipients of the charity, is entitled to exercise some discretion in the discharge of the duties imposed upon it. *Davis* v. *Barnstable*, 154 Mass. 224, 227.

In the first case the interlocutory decree sustaining the demurrer is affirmed. In the second case the interlocutory decree denying the motion to intervene is affirmed. The plaintiff in the second case is instructed in accordance with this opinion.

*Ordered accordingly.**

---

* The instructions stated in the rescript were as follows:

"The words 'citizens of Boston' mean all persons who are citizens of the United States and who are domiciled in Boston. Women and children may be admitted to the hospital in such numbers as in the judgment of the petitioner is deemed proper, but not to the exclusion of a reasonable number of adult male applicants, provided such women and children are otherwise qualified for admission under the terms of the will of the testator. The words 'chronic' and 'incurable' are not synonymous. An applicant suffering from a chronic disease, and otherwise proper to be admitted under the terms of the will, is not to be denied admission, if in the opinion of the hospital physicians there is a reasonable probability that by scientific and specialized treatment such person's condition may be alleviated or cured so that the patient may be able to care for himself thereafter outside the hospital. The petitioner is not

---

required to divide its hospital accommodations in fixed proportions for the care of its several classes of patients, but should provide accommodations for the three classes of persons described in the will in such manner as will result in the greatest benefit to each class. Applicants for admission to be eligible need not be entirely destitute of all property; nor are they to be excluded if they have friends or relatives legally bound to support them, but who refuse to do so; but, if an applicant has friends or relatives who are not only able but willing to support such applicant comfortably and furnish proper medical and surgical treatment outside the hospital, such applicant should not be admitted."