JOHN S. AMES & others *vs.* ATTORNEY GENERAL
(and a companion case[1]).

Suffolk. October 7, 1954. — February 11, 1955.

Present: QUA, C.J., LUMMUS, WILLIAMS, & COUNIHAN, JJ.

*Attorney General. Trust,* Charitable trust. *Charity. Administrative Matter. Public Officer. Jurisdiction,* Justiciable question. *Constitutional Law,* Separation of powers of government.

A decision by the Attorney General not to permit the use of his name in a suit which certain individuals desired to have brought against the trustee of a public charitable trust to determine whether action proposed by the trustee would constitute a breach of trust was an executive decision not reviewable by the courts. [250]

The duty of taking action to protect public charitable trusts and to enforce proper application of their funds rests solely on the Attorney General. [250]

Individuals without any interest other than that of the general public in the proper administration of a public charitable trust, alleging that the Attorney General had been influenced by erroneous views of the law in making a decision not to permit the use of his name in a suit which they desired to have brought against the trustee to determine the propriety of proposed action of the trustee, could not maintain proceedings in court to have the Attorney General's decision vacated and to have him ordered to reconsider the matter and hear them further in the light of correct principles; to grant the relief sought would be an interference by the courts with an executive officer in violation of art. 30 of the Declaration of Rights of the Constitution of Massachusetts. [252–253]

PETITIONS, filed in the Supreme Judicial Court for the county of Suffolk on December 9, 1953.

The cases were reserved and reported by *Lummus,* J.

*Robert G. Dodge,* (*J. Wells Farley, Harold S. Davis, Endicott Peabody, & John M. Woolsey, Jr.,* with him,) for the petitioners.

*Harris A. Reynolds,* Assistant Attorney General, for the respondent.

---

[1] The companion case is by the same petitioners against the same respondent.

QUA, C.J. These are petitions in this court brought respectively for a writ of mandamus and for a writ of certiorari by the same petitioners against the Attorney General. The petition for a writ of mandamus is reported by the single justice upon the amended petition and upon the respondent's motion to dismiss and demurrer. The petition for a writ of certiorari is reported by the single justice upon the amended petition and the respondent's substituted motion to dismiss, demurrer, and return as extended.

The pleadings with the exhibits appended thereto or incorporated therein are voluminous and detailed. The substantive allegations are the same in each petition. For the purposes of this decision it will be sufficient to state them only in the broadest outline.

By indenture dated March 29, 1872, the trustees under the will of James Arnold transferred to the President and Fellows of Harvard College, hereinafter called the College, a fund to be held in trust by the College for the purpose of establishing and maintaining the "Arnold Arboretum" on a large tract of land of the College in West Roxbury (now part of Boston) and for the support of an "Arnold Professor" who should have the care and management of the arboretum. Under this indenture the College became the trustee of a public charitable trust. See *Rotch* v. *Emerson*, 105 Mass. 431.

The original trust fund has been greatly augmented by subsequent gifts for the purposes of the arboretum, so that its total endowment now amounts at market value to some $5,000,000. It has sent field expeditions to gather specimens in various parts of the world. It now maintains at West Roxbury a collection of some 6,000 species and varieties of living trees and shrubs. It has also at West Roxbury an excellent horticultural-botanical library of about 40,000 books and 15,000 pamphlets and an herbarium of great value containing nearly 700,000 specimens. The conjunction of these resources in one place has given the arboretum a world wide status and reputation as an integrated scientific institution. Members of its staff have been en-

gaged in full time scientific research, the published results of which have added to the reputation of the arboretum.

The College now proposes to remove to Cambridge the main body of the library and herbarium of the arboretum related to research to be there combined to a greater or less extent with other collections of books and specimens owned by the College in connection with its botany department. There are to be left at West Roxbury only such books and specimens as may be required to provide there "a working library and herbarium." It is alleged that this proposal, if carried into effect, would break down the arboretum as an integrated scientific institution, prevent future donations for its endowment, and injure its reputation and prestige; that it would involve the use of arboretum income for purposes outside the scope of arboretum activities; and that in some respects the intended action would interfere with the independent status of the Arnold Professor as established by the trust indenture. The position of the petitioners is that the College holds the endowment of the arboretum upon an express trust for the benefit of the arboretum alone as an entity separate from the College; that the funds were donated for the benefit of that entity and not of the College; and that the proposed changes, even if beneficial to botany at Harvard in general, would be harmful to the arboretum as a separate institution and would constitute breaches of the trust established by the indenture of 1872.

The petitions contain further allegations that the College has refused to bring a petition for instructions to determine its right to institute the proposed changes and that counsel for the petitioners sought the Attorney General to permit the use of his name in an information to be brought to obtain a declaratory decree. Conferences were had with an assistant attorney general and correspondence took place and arguments and legal opinions were presented with a view to persuading the Attorney General to permit the use of his name. On July 2, 1953, the assistant attorney general rendered a decision in writing in which he states that

the judgment of trustees cannot be overridden by the courts unless the trustees decide arbitrarily, capriciously, or in bad faith; that the College reached its decision honestly, faithfully, and for what it considers to be the best interests of the arboretum; that "there is no legal breach of trust"; that "To permit the use of the name of the Attorney General . . . where it is clear to him the trustee is acting in good faith and within the bounds of reasonable judgment and sound discretion, simply because others, equally in good faith, differ with the decision of the trustee, would open the door to unreasonable and vexatious litigations"; and that accordingly by direction of the Attorney General the application was denied.

The petitions go on to allege that the Attorney General has misconceived his duty; that he should have gone no farther than to determine whether there was a question fit for judicial inquiry; and that the decision discloses various specified errors of law and fact.

The petitioners do not allege that they have any right or standing in relation to the subject matter different from that of other members of the public. They do allege that they have for many years been actively interested in the arboretum and have contributed to it, and that all but two of them are members of the visiting committee appointed by the board of overseers of the College to visit the arboretum. So far as appears this committee has no rights or powers, but exists as a part of the machinery of the College merely for purposes of information and advice. It is not alleged that the petitioners are a majority of the committee, or that they are acting in its behalf. Compare *Trustees of Andover Seminary* v. *Visitors*, 253 Mass. 256, 300–302.

The prayer of the petition for mandamus is that a writ issue commanding the respondent to vacate his decision refusing the use of his name, to "grant the petitioners a hearing in the proper sense of the term," and to reconsider the petitioners' application and grant it if upon full personal consideration of facts and law it appears that the issues which the petitioners seek to raise are fit subjects for judi-

cial inquiry, even though it may appear to him that the past and proposed action of the College is not in breach of trust.

The prayer in the petition for certiorari is that the writ issue to quash the denial by the respondent of the petitioners' application for the use of his name, and that the respondent be required to grant a hearing on said application and to decide in accordance with correct principles of law.

In our opinion the decision of the Attorney General not to permit the use of his name in a suit against the College for alleged breach of a public charitable trust was a purely executive decision which is not reviewable in a court of justice. The duty of taking action to protect public charitable trusts and to enforce proper application of their funds rests solely upon the Attorney General as the representative of the public interests. This is so both at common law and under G. L. (Ter. Ed.) c. 12, § 8.[1] The exclusive character of this duty thus placed upon the highest law officer of the Commonwealth has been repeatedly stated in our decisions. In *Parker* v. *May*, 5 Cush. 336, Chief Justice Shaw said that a suit for establishing and sustaining charitable trusts "must be prosecuted with the sanction of the public prosecutor, whose duty it is to see that the public interests sustain no detriment, and to proceed in the prosecution or stay proceedings, as a just regard to these interests may require. It follows, therefore, that this proceeding is not to be considered as the suit of the relators; nor can the relators, of their own motion, or in their own names, take any step in the cause, or be heard as parties."[2] Page 337. In *Dillaway* v. *Burton*, 256 Mass. 568, at page 573, this court said, "It is well settled that it is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings. It is his duty to see that the public interests are protected and

---

[1] This section reads, "He [the Attorney General] shall enforce the due application of funds given or appropriated to public charities within the commonwealth, and prevent breaches of trust in the administration thereof." For new legislation establishing a division of public charities in the department of the Attorney General see St. 1954, c. 529.

[2] The quotation is from an opinion of Chief Justice Shaw rendered as the single justice who first heard the case.

to proceed in the prosecution or to decline so to proceed as those interests may require." The opinion then quotes from the previous decision of *Burbank* v. *Burbank,* 152 Mass. 254, at page 256, as follows, "But the law has provided a suitable officer to represent those entitled to the beneficial interests in a public charity. It has not left it to individuals to assume this duty, or even to the court to select a person for its performance. Nor can it be doubted that such a duty can be more satisfactorily performed by one acting under official responsibility than by individuals, however honorable their character and motives may be." Other authorities are *Sanderson* v. *White,* 18 Pick. 328, 339, *Attorney General* v. *Bedard,* 218 Mass. 378, 385, *Krauthoff* v. *Attorney General,* 240 Mass. 88, 92, *Judkins* v. *Hyannis Public Library Association,* 302 Mass. 425, *Bolster* v. *Attorney General,* 306 Mass. 387, 389, *Elias* v. *Steffo,* 310 Mass. 280, 284, *City Bank Farmers Trust Co.* v. *Carpenter,* 319 Mass. 78, 81, *Trustees of Dartmouth College* v. *Quincy,* 331 Mass. 219, 225, *Mackey* v. *Bowen, ante,* 167. Restatement: Trusts, § 391, comments a and d, and Scott on Trusts, § 391, especially at page 2056.

The same principle has been held applicable in other instances where discretion as to taking action is committed to the Attorney General or to a district attorney. *Brierley* v. *Walsh,* 299 Mass. 292, 295 (information in the nature of quo warranto to try title to office). *Newman* v. *United States,* 238 U. S. 537 (same). *Commonwealth* v. *Tuck,* 20 Pick. 356, 366 (nolprossing indictment). *Kirkpatrick* v. *Retail Merchants Association of Tulsa,* 140 Okla. 118 (instituting criminal prosecution). *Boyne* v. *Ryan,* 100 Cal. 265 (instituting civil suit). *State* v. *Jones,* 252 Ala. 479 (continuing, dismissing or compromising suits). *Lewright* v. *Bell,* 94 Texas, 556 (instituting proceedings for forfeiture of charter). See *Attorney-General* v. *Westminster City Council,* [1924] 2 Ch. 416.

By comparing the prayers of the petitions with the extensive argument of the petitioners it appears that they do not make a frontal attack upon the well established principle

that the decision whether he shall act rests with the Attorney General. Instead they attempt a flank attack. They do not claim that they can compel the Attorney General to permit the use of his name. They do not claim that he has refused to act altogether. They admit that he has received arguments both from them and from their opponents. He has exercised his discretion. Their complaint is with respect to the mental processes by which he reached his conclusion, which they contend were such as to lead to an abuse of discretion. See *M. Doyle & Co. Inc.* v. *Commissioner of Public Works of Boston,* 328 Mass. 269, and cases cited. Their contention is that in denying the use of his name he was influenced by erroneous views of the law as to his duty when a plausible case of breach of trust was presented to him and by erroneous views of the law of trusts, by erroneous interpretations of the indenture of 1872, by other errors, and by unsound arguments presented to him in behalf of persons opposed to the petitioners. They claim the right to have the determination of the Attorney General not to permit the use of his name vacated by the court and to have him required to reconsider the matter, after giving the petitioners a further opportunity to persuade him, and according to correct principles of law, presumably to be laid down by the court in this proceeding, all for the purpose of ascertaining whether he will not change his mind.

We are not convinced that the petitioners, who have no interest other than that of the general public, have any legal right to demand a decision of the court in advance before action is brought, and when action may never be brought, in a matter ultimately resting in the executive discretion of the Attorney General, and when the court in the last analysis can only advise and cannot command. See *Denby* v. *Berry,* 263 U. S. 29, 36. We are appalled at the prospect that the multitude of executive and administrative decisions which must be made daily are subject to attack in court by self appointed members of the public without private interest, who may proceed to catechize the officer concerned as to what views of the law he had entertained,

what arguments he had listened to, and by which ones he had been influenced. It seems to us that a practice of this kind would constitute an intolerable interference by the judiciary in the executive department of the government and would be in violation of art. 30 of the Declaration of Rights. *Stretch* v. *Timilty*, 309 Mass. 267, and cases cited. *Attorney General* v. *Trustees of Boston Elevated Railway*, 319 Mass. 642, 656–657. We have been unable to discover any principle by which the case now before us can be differentiated from a great number of cases that might be instituted from all sorts of motives. Not only would charitable trusts be exposed to attack from all sides, the prevention of which is one of the reasons for leaving the matter of bringing suit in the sole discretion of one officer, but, for aught we can see, other decisions in the administrative field having nothing to do with trusts would be laid open to similar assault.

The petitioners admit a general lack of authority on the alleged power of the court to make the kind of inquiry which they seek to have the court make in this case. They have cited nothing that appears to us persuasive. In *State* v. *Chisholm*, 196 Minn. 285, the relator town had an interest in the preservation of its territorial integrity and its taxable property. That case should be read in connection with the later case of *State* v. *Johnson*, 201 Minn. 219. In *Lamoreaux* v. *Attorney General*, 89 Mich. 146, the decision of the Attorney General was ultimately sustained by the court. All three of these cases had to do with proposed quo warranto proceedings to try title to office and not to the administration of a charitable trust. It may be that at least as to quo warranto the law in these States differs from our own as declared in *Brierley* v. *Walsh*, 299 Mass. 292, 295, hereinbefore cited. The case of *Cheetham* v. *McCormick*, 178 Pa. 186, seems to depend upon peculiar statutory provisions.

The petitioners do rely upon cases of two general classes. They cite cases like *French* v. *Jones*, 191 Mass. 522, *Liggett Drug Co. Inc.* v. *License Commissioners of North Adams*, 296 Mass. 41, *Scudder* v. *Selectmen of Sandwich*, 309 Mass. 373, and *Kidder* v. *City Council of Brockton*, 329 Mass. 288. In

cases of this general type, of which a great many might be cited, the petitioner has a private right, usually but not necessarily, involving a permit or license to do something upon his own land or to engage in some lawful activity or occupation. It is this private interest that gives him standing as a litigant. The second class consists of those cases like *Brewster* v. *Sherman,* 195 Mass. 222, *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, *Sears* v. *Treasurer & Receiver General,* 327 Mass. 310, 314–315, and *Sunderland* v. *Building Inspector of North Andover,* 328 Mass. 638, where the respondent owed a positive duty to the public as a whole to perform a certain act or series of acts which he had altogether refused or failed to perform, and individual members of the public were held to have standing to require such performance. Cases of neither class are authority in the present case. See *Police Commissioner of Boston* v. *Boston,* 279 Mass. 577, 585–586.

It follows that in each case an order is to be entered sustaining the respondent's demurrer, and judgment is to be entered dismissing the petition.

*So ordered.*