JOHN ROTHBERG *vs.* JAY SCHMIEDESKAMP.

Hampshire.    September 20, 1955. — May 11, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Insurance,* Motor vehicle liability insurance, Termination of policy, Reinstatement of policy. *Minor. Contract,* With minor, Voidable contract. *Equity Jurisdiction,* Declaratory relief. *Declaratory Judgment. Practice, Civil,* Intervention. *Words,* "Voidable."

A motor vehicle liability insurance policy in the standard form issued to a minor, which had terminated under G. L. (Ter. Ed.) c. 175, § 113A, (2)A, and under a provision in the policy by his sale and transfer of the insured motor vehicle, was not reinstated by his subsequent avoidance of the sale. [176]

In an action at law for personal injuries allegedly sustained through the defendant's operation of an automobile, it was improper to allow the insurer under a policy of motor vehicle liability insurance issued to the defendant to intervene and to file therein a bill for a declaration of rights and obligations under the policy; the intervener had no legal interest in the action and sought to raise an issue foreign to the issues involved therein, and the proceeding was not "appropriate" for obtaining declaratory relief under G. L. (Ter. Ed.) c. 231A. [177–178]

TORT.    Writ in the Superior Court dated June 16, 1953.

Standard Accident Insurance Company as intervener appealed from a decree entered by *Meagher, J.,* on its bill for declaratory relief.

*Edward F. Mahony & Thomas H. Mahony,* for the intervener, submitted a brief.

*Edwin P. Dunphy,* for the defendant.

WILLIAMS, J.    This is an appeal by Standard Accident Insurance Company, intervener in an action for personal injuries by John Rothberg against Jay Schmiedeskamp, from a decree entered in that action upon its bill for a declaration of its rights and obligations under a policy of automobile liability insurance issued by it to Schmiedeskamp. The action appears to have been commenced in June, 1953, by writ returnable in the Superior Court on July 6.    The

pleadings are not reported but we assume that they were those customarily filed in tort actions for negligence. On October 8 the insurance company was, without objection, allowed to intervene and file its bill. It alleged a "serious dispute" between it and Schmiedeskamp over the interpretation of its policy and both Schmiedeskamp and Rothberg by their answers joined in seeking a determination of rights and obligations thereunder. The bill was heard on a statement of agreed facts filed on October 18, 1954, which in brief were as follows. On March 25, 1953, the company issued to the defendant, who was a minor and a student at Amherst College, a policy insuring him against liability arising out of the ownership, maintenance, or use of a certain automobile, described as a Packard convertible coupe. The policy was in standard form and, in addition to the statutory compulsory coverage, provided, in a clause labelled B, for insurance against liability for bodily injuries to guest occupants. This coverage was optional and required payment of an additional premium. If a person was insured under coverage B the policy applied to the use by the insured of any other motor vehicle. It was provided that "The insurance under this policy with respect to a motor vehicle shall terminate (a) upon the sale or transfer of such motor vehicle . . . ." The defendant, who owned the Packard, registered it, and attached to it the registration plates issued by the registry. On or about May 20 he contracted with one Alvin A. Ferber of Lakewood, New Jersey, through the latter's son, who was a student at the University of Massachusetts, to exchange the Packard for a Mercury automobile owned by Ferber plus $80 in cash. The exchange was consummated. The defendant signed a bill of sale to Ferber, delivered the Packard to Ferber's son, and received $80 and the Mercury. This Mercury had been registered in New Jersey and bore New Jersey registration plates. The defendant proceeded to operate the Mercury with its New Jersey registration plates and while so operating it in Amherst on May 24 collided with a tree or pole and thereby caused injury to the plaintiff who was a guest

occupant in the automobile. The defendant reported the facts of the exchange of automobiles to the insurance company on May 28 in terms substantially as above stated. On June 1 the company received notice of the accident from the defendant's father by letter addressed to it care of Lyle Insurance Agency, Quincy, Illinois. On May 25 the father had delivered to this agency a check for $67.12 in payment of the premium on the policy. "This premium was accepted after knowledge, on the part of the general agent of the Standard Accident Insurance Company, of all the facts surrounding the accident, and the change in automobiles." A tender of the unearned portion of the premium was made to the defendant on or about May 3, 1954, and refused. On or about June 13, 1953, a firm of attorneys wrote to Ferber stating that they represented the defendant and that he was "at the time of the alleged transfer, a minor, not capable of making a binding contract, and therefore, he avoids, repudiates and disaffirms said attempted contract on the basis of his minority." On July 23 the company caused an appearance and answer in the Rothberg action to be filed in behalf of the defendant and on July 27 notified the defendant of what it had done. In the letter of notification the company stated that the policy had terminated when the Packard was sold and delivered, that it would not satisfy any judgment in the case, and that it reserved all rights and defences which it had under the policy against the defendant or any person claiming derivatively through him. The defendant has made no effort to redeliver the Mercury or to obtain redelivery of the Packard.

The judge, subject to the company's exception, denied the company's request to rule that the policy "terminated on May 20, 1953, with the sale and transfer of the Packard automobile." On February 18, 1955, he entered a "declaratory decree" stating, "it is ordered, adjudged and decreed that the policy of insurance by Standard Accident Insurance Company to Jay Schmiedeskamp did not terminate on May 20, 1953; that the Standard Accident Insurance Company has an obligation under the said policy to furnish

a defence to Jay Schmiedeskamp or to indemnify him for any judgment entered in the action of John Rothberg vs. Jay Schmiedeskamp, No. 9206 or in any other personal injury action resulting from the operation of any automobile under paragraph 1 [statutory coverage] of the policy issued on March 25, 1953." He filed a report of material facts which, after a statement of the facts of the transfer and of the accident, contained findings "that on June 13, 1953, his [the defendant's] attorney rescinded the contract of sale with Ferber; that the avoidance of this contract made the sale from Schmiedeskamp to Ferber of the Packard automobile void. The sale being void, the policy issued by the Standard Accident Insurance Co. was therefore not cancelled by any sale by the insured Schmiedeskamp." The case is here on the company's appeal from the declaratory decree.

The agreed facts show an existing actual controversy between the defendant and the company in respect to the former's rights and the latter's obligations under its policy. *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227. *Maryland Casualty Co.* v. *United Corp. of Massachusetts*, 111 Fed. (2d) 443.

By its terms the defendant was insured against liability for personal injury to a guest occupant while operating any motor vehicle. This coverage was nonstatutory. The continuance of the insurance contract depended on the defendant's retention of ownership of the automobile to which the contract referred, namely, the Packard. By the terms of the policy and also by provision of statute (G. L. [Ter. Ed.] c. 175, § 113A, [2]A) the policy was to terminate on the transfer of title to this motor vehicle. It is plain, therefore, that the transfer of the Packard by the defendant to Ferber as matter of law terminated the policy of insurance. As the defendant was a minor his contract with Ferber was voidable (*Frye* v. *Yasi*, 327 Mass. 724, 728, and cases cited) and could be avoided or disaffirmed by him during his infancy. Such disaffirmance would annul the contract on both sides, ab initio, and the parties would revert to

their original situation as if the contract had not been made. *Boyden* v. *Boyden*, 9 Met. 519. *Carpenter* v. *Grow*, 247 Mass. 133. "Voidable" imports a valid act which may be avoided, rather than an invalid act which may be confirmed (Williston on Contracts [Rev. ed.] § 231), and the contract of a minor is valid as to both parties until rescinded. *Badger* v. *Phinney*, 15 Mass. 359, 363. *Scanlan* v. *Wright*, 13 Pick. 523, 530. *Kendall* v. *Lawrence*, 22 Pick. 540. *Boyden* v. *Boyden*, 9 Met. 519. *Edgerton* v. *Wolf*, 6 Gray, 453. *Dexter* v. *Blanchard*, 11 Allen, 365, 366. *Kingman* v. *Perkins*, 105 Mass. 111.

If, in these proceedings, to which Ferber is not a party, it could properly be found that the defendant's contract with him was avoided, such avoidance would not reinstate the contract of insurance. The company was not a party to the sale of the Packard and the rights which it acquired by virtue of that sale were not affected by the defendant's subsequent acts. The "privilege of infancy is a shield, and not a sword." *Badger* v. *Phinney*, 15 Mass. 359, 363. In *Carpenter* v. *Grow*, 247 Mass. 133, the plaintiff, a minor, disaffirmed a contract whereby he purchased an automobile from the defendant and transferred to him in part payment a Dodge automobile. The defendant sold the Dodge before the contract was avoided and it was held that, while the plaintiff could recover the value of the Dodge at the time it was transferred to the defendant, he could not recover the amount which the defendant subsequently received for it. The court said (pages 136–137), "Even though . . . the disaffirmance of his contract by a minor relates back to the date of the contract . . . there was nothing tortious in any act of the defendant, either in the receipt or disposal of the Dodge automobile. At the time when the defendant sold it, he held it as owner under an existing valid contract. 'The subsequent avoidance of the contract under which it had been done could not convert those acts of the defendant into a tort.'" If a party to a contract may properly act in reliance on it before disaffirmance it follows that a third party has a similar right. It is not material that the policy

here was terminated by operation of law rather than by act of the company.

Whether the company should be given declaratory relief on its bill remains to be considered. By G. L. (Ter. Ed.) c. 231A the court may on "appropriate proceedings" make binding declarations of right. Proceedings which the Legislature deems appropriate are set forth in § 6 which reads, "In an action at law or suit in equity heretofore or hereafter brought to obtain a judgment or other consequential relief, whether such judgment or relief is granted or not, the court may make a binding determination as provided in this chapter upon application of any party made in his declaration, bill, petition or answer." Since the enactment of c. 231A it has been usual practice for one seeking a declaratory decree to proceed either by separate bill or, if already a party in a pending case, by a prayer supplemental to his pleading. Here the applicant for a decree did not file a separate bill and not being a party to the pending action could not append a prayer for relief to any pleading. It elected to seek declaratory relief by intervening in a proceeding to which it was not a party.

We are not prepared to rule that the procedure for obtaining a determination of right set forth in § 6 is exclusive and that other proceedings which the court may consider appropriate are impliedly prohibited. Where a person has properly been allowed to intervene in a pending suit, his interest therein may be of such a nature that he should be granted declaratory relief. In the present case, however, the allowance of the intervention was manifestly improper. The intervener had no legal interest in the action, there being at issue no claim either of the plaintiff or of the defendant which it, if it became a party to the action, would be entitled to prosecute or protect. In *Brune* v. *McDonald*, 158 Ore. 364, 371, a case involving a situation similar to the present one, it was said, "It is obvious that the direct legal operation of the judgment in the case at bar would not cause intervener either to gain or lose anything. . . . 'The courts

have always striven to maintain the integrity of the issues raised by the original pleadings, and to keep newly admitted parties within the scope of the original suit. . . . The injection of an independent controversy by intervention is improper.'" See *Dillaway* v. *Burton*, 256 Mass. 568, 575–576; *Check* v. *Kaplan*, 280 Mass. 170, 178; *Piper* v. *Childs*, 290 Mass. 560, 563; *Eno* v. *Prime Manuf. Co.* 314 Mass. 686, 703; *D. J. Doyle & Co. Pty. Ltd.* v. *Darden*, 328 Mass. 288, 291–292. Having become a party to the action the intervener by its bill seeks a binding declaration of right in respect to a matter foreign to any issue with which the action is concerned. In our opinion the proceeding is not one which should be held appropriate for obtaining the declaratory relief contemplated by the statute. The possible consequences of permitting irrelevant issues to be injected in an action at law require no discussion. They furnish sufficient reason for refusing to enter a declaratory decree. We are inclined, however, as the point of practice is novel and a similar combination of procedural circumstances is not likely to reoccur, to decide the case presented by the bill upon its merits. The existing actual controversy will thereby be settled. The decree of the Superior Court is reversed and a decree is to be entered in conformity with this opinion.

*So ordered.*