**Ruth Frick RICE, Plaintiff-Appellant,**

**v.**

**The PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
Defendant-Appellee.**

**No. 81–1139.**

United States Court of Appeals,
First Circuit.

Argued Sept. 15, 1981.

Decided Nov. 2, 1981.

Ruth Frick Rice, pro se.

John H. Mason, Boston, Mass., with whom George Marshall Moriarty and Ropes & Gray, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, CAFFREY,* District Judge.

* Of the District of Massachusetts, sitting by designation.

BOWNES, Circuit Judge.

Appellant Ruth Frick Rice appeals from an order of the district court dismissing her action against the President and Fellows of Harvard College. She brought suit under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3) and 20 U.S.C. § 1681, claiming sex discrimination in the awarding of grades at Harvard Law School. She also brought a pendent state claim alleging breach of fiduciary duty by defendants-appellees in that they discriminated on the basis of sex and failed to maintain the facilities of Harvard Law School up to proper educational standards. As examples of such failure, she points to the conversion of a classroom for storage space, mismanagement of the work-study program, overcrowding in classrooms, and the inoperability of the LEXIS computer.

Rice alleges that, despite the fact that exam papers are identified only by a number, women are deliberately given lower grades. She claims that the cloak of anonymity is pierced in two ways. One, those papers containing feminine handwriting and feminine modes of expression are identified and downgraded. Two, after the professors have turned in their grades, they are provided with a list of students' names, their corresponding identification numbers and their grades. At that point, appellant asserts, the grades can be changed by the professor on the basis of clerical error in the original grades. The student, of course, has no knowledge of her original grade and does not know that a change has been made. It is plaintiff's contention that many clerical error changes are in reality changes to a lower grade based on the fact that the student is a female.

Appellant's § 1983 claim of deprivation of her civil rights was properly dismissed. In *Krohn v. Harvard Law School*, 552 F.2d 21 (1st Cir..1977), we held that Harvard is not a public institution and is not sufficiently intertwined with the Commonwealth of Massachusetts so as to meet the "state action" requirement for a § 1983 cause of action. Rice seeks to reargue to this court the "historical debate" concerning

the founding of Harvard which we found unpersuasive in *Krohn. Id.* at 23. We see no reason to overrule our prior decision and, therefore, affirm the dismissal of the § 1983 claim.

■ Rice also complains that in awarding lower grades to female students the faculty of Harvard Law School unlawfully conspired to deprive her of her civil rights in violation of 42 U.S.C. § 1985(3). The fatal defect in this claim is that she has sued only the President and Fellows of Harvard College, which is a single corporate entity and, therefore, unable to conspire with itself in violation of § 1985(3). *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972); *Williams v. Northfield Mount Hermon School*, 504 F.Supp. 1319, 1328 (D.Mass. 1981); *Zentgraf v. Texas A & M University*, 492 F.Supp. 265, 272–273 (S.D.Tex.1980). *See Cole v. University of Hartford*, 391 F.Supp. 888, 892–894 (D.Conn.1975). Although she alleged "across-the-board" discrimination by the faculty, Rice named no individual faculty members as defendants. Her conspiracy claim was, therefore, properly dismissed by the district court.

The third federal statute on which appellant seeks to base a cause of action for sex discrimination is § 901 of Title IX of the Education Amendments of 1972, codified at 20 U.S.C. § 1681 *et seq.* Section 1681(a) provides in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

Rice would have us interpret "education program" in this case to mean Harvard Law School, thereby permitting her to invoke the protection of Title IX. Such an interpretation is essential to her claim, as she has not specified any federally funded program in which she suffered discrimination because of her sex. Her argument is that, by virtue of the Law School's status as a recipient of federal funds through such specific programs as work-study, Title IX applies whenever the School discriminates in *any* area, regardless of whether the discrimination occurs in a program that is federally funded.

We have previously had occasion to construe the scope of Title IX in another context in *Islesboro School Committee v. Califano*, 593 F.2d 424 (1st Cir. 1979). As we did in *Islesboro*, we begin with an examination of the plain language of the statute.

"Education program or activity" is not expressly defined in Title IX. However, the statute does contain a definition of "educational institution" at 20 U.S.C. § 1681(c), which provides:

> For purposes of this chapter an educational institution means any public or private preschool, elementary, or secondary school, or any institution of vocational, professional or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such term means each such school, college, or department.

■ Thus, according to the plain meaning of the statute, Harvard Law School is an educational institution under Title IX. The precision with which Congress defined educational institution strongly indicates that it did not equate education program with educational institution. It obviously recognized that an educational institution offers a number of education programs and activities. In light of § 1681(c), the only meaningful interpretation of § 1681(a) is that it prohibits sex discrimination in a federally funded education program offered by an educational institution.[1]

---

1. The legislative history of 20 U.S.C. § 1681(a) on this issue is illuminating, albeit scant. When originally introduced by Senator Bayh in 1971, the section read as follows:
   No person in the United States shall, on the ground of sex, be excluded from participation in, be denied the benefits of or be subject to discrimination under any program or activity conducted by a public institution of higher education, or any school or department of graduate education, which is a recipient of Federal financial assistance for any education program or activity. . . .

By alleging merely that Harvard Law School receives federal funds for its work-study program, without alleging sex discrimination in the School's handling of that program, Rice has failed to bring herself within the protection of Title IX.[2] *See Romeo Community Schools v. U. S. Department of HEW,* 600 F.2d 581, 584 (6th Cir. 1979); *Othen v. Ann Arbor School Board,* 507 F.Supp. 1376, 1380 (E.D.Mich.1981).

Finally, we turn to appellant's pendent state claim against Harvard, that the corporation breached its fiduciary duty to her as a beneficiary of a charitable trust. The district court dismissed this claim, holding that Rice had no standing to sue in light of Mass.Gen.Laws Ann. ch. 12, § 8, which commits to the Attorney General the duty of protecting charitable trusts. The district court relied on *Ames v. Attorney General,* 332 Mass. 246, 124 N.E.2d 511 (1955), which held, "The duty of taking action to protect public charitable trusts and to enforce proper application of their funds rests solely upon the Attorney General as the representative of the public interests." *Id.,* 124 N.E.2d at 513.

We do not think that the district court should have determined appellant's standing under Massachusetts law. She contends that her private interest as a law school graduate beneficiary is separate and distinct from that of the general public and may, therefore, be vindicated through private action. There is dicta in *Ames v. Attorney General,* 124 N.E.2d at 513, 515, and in *Dillaway v. Burton,* 256 Mass. 568, 153 N.E. 13, 16 (1926), that might be interpreted as support for her claim. It is clear, however, that the pendent state claim should have been dismissed, under the authority of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966): "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

*The opinion of the district court is affirmed as to the federal claims. The case is remanded for dismissal of the pendent state claim without reaching the question of standing under Massachusetts law.*

117 Cong.Rec. 30156 (1971). This indicated an institutional approach to the problem of sex discrimination, as urged by the appellant. However, this language is in stark contrast to the substituted final version of § 1681(a) which is aimed at specific programs. *Othen v. Ann Arbor School Board,* 507 F.Supp. 1376, 1380–1383 (E.D.Mich.1981). Thus, the legislative history evinces Congress' deliberate choice of a programmatic approach rather than an institutional approach to combating sex discrimination in education. *Id.*

The programmatic approach is also supported by the language of 20 U.S.C. § 1682, which authorizes enforcement of § 1681. The primary enforcement mechanism contemplated by this section is termination of federal funds, but such termination is limited to the particular program in which noncompliance is found.

2. In support of her institutional theory, Rice cites the Supreme Court's decision in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), in which the Court found a private right of action under Title IX. There, a female applicant who was denied admission to the University's medical school sued on the ground of sex discrimination. In footnote 2 at 680–81, 99 S.Ct. at 1949, the Court noted that the medical school received federal aid, without specifying which particular program was funded. The Court did not address the issue of the requisite nexus between the specific funded program and the alleged discrimination. We think it reasonable, however, in a case involving discrimination in admission to an educational institution that a plaintiff not be required to allege that a particular funded program discriminated against her. One who is discriminated against in seeking admission is denied access to all educational programs and activities within an institution, and the entire body of programs within the school is tainted. *Othen v. Ann Arbor School Board,* 507 F.Supp. at 1387–88; *Grove City College v. Harris,* 500 F.Supp. 253, 268 (W.D.Pa.1980). *Contra, Stewart v. New York University,* 430 F.Supp. 1305 (S.D.N.Y.1976) (female denied admission to law school failed to state a claim under § 1681 where no allegation of federal funding of admissions program).

As this case does not present the situation of alleged sex discrimination in admissions, we do not decide this issue. We hold only that once admitted to an educational institution, allegations of discrimination in violation of 20 U.S.C. § 1681 must involve discrimination by the particular funded education program within that institution.